**Melody Ann NELSON, Appellant,**

v.

**Beth MAHURIN, Appellee.**

**No. 1996–CA–002875–MR.**

Court of Appeals of Kentucky.

Dec. 18, 1998.

Gary M. Gibbs, Henderson, KY, for Appellant.

Dorin E. Luck, Henderson, KY, for Appellee.

Before GUIDUGLI, JOHNSON and KNOPF, Judges.

## OPINION

JOHNSON, Judge.

Melody Ann Nelson (Nelson) has appealed from the judgment of the Henderson Circuit Court entered on September 19, 1996, which summarily quieted title to certain realty in Beth Mahurin (Mahurin). We reverse and remand.

The controlling facts in this matter are not in dispute. Mahurin was previously married to Donald Riddle (Riddle). In May 1978, while still married, Mahurin and Riddle purchased a residence on Meadowlark Lane in Henderson, Kentucky. The deed conveying the property clearly created a tenancy by the entirety. Kentucky Revised Statutes (KRS) 381.050.[1] In Au-

---

1. The property was conveyed to "Donald R. Riddle and his wife, Beth M. Riddle, jointly

gust 1978, Mahurin and Riddle executed a note secured by a mortgage on the property which was assigned to Farmers Bank & Trust Company (Farmers Bank).

During 1988, Mahurin and Riddle divorced. On October 11, 1988, they entered into a property settlement agreement, pertinent portions of which provide as follows:

WHEREAS, the parties are desirous of effecting a property settlement agreement based on fair and equitable terms and acting as a complete and final settlement of all respective claims arising out of the marriage;

. . .

4. *Marital Debts.* There have been debts incurred as a result of the marriage relationship between [Mahurin] and [Riddle], and the parties agree that [Mahurin] will be responsible for the payment of the indebtednesses owed to VISA in the approximate amount of $800; Mastercard in the approximate amount of $2,500; Simon's in the approximate amount of $600; L.S. Ayers in the approximate amount of $400; Lazarus in the approximate amount of $450; DeJong's in the approximate amount of $200; and Sunoco in the approximate amount of $230.

It is further agreed that [Riddle] will be responsible for the indebtedness owed to Spiegel in the approximate amount of $1,800 and that [Riddle] will be responsible for the payment of any and all other indebtednesses owed as a result of the marriage relationship, including the indebtedness owed on real property located at 2809 Meadowlark, Henderson, Kentucky. [Riddle] shall make every effort to remove [Mahurin's] name and the name of [Mahurin's] father, Don Mahurin, from all indebtednesses on the real property. [Mahurin] will execute any and all instruments necessary to convey full title to the property to [Riddle] at such time as

[Mahurin's] name is removed from the indebtedness on the real property.

. . .

6. *Mutual Release.* Except as otherwise hereinabove provided, each party hereby releases and discharges completely and forever the other from any and all rights of past, present and future support, division of property, right of dower, right to act as personal representative of the estate of the other, right of distributive share in the other's estate, right of exemption in the estate of the other or any other property right, benefits, or privileges accruing to either party by virtue of their marriage relationship, or otherwise; whether the same are conferred by the laws of the Commonwealth of Kentucky or any other state in the United States.

. . .

8. *Full and Complete Settlement.* It is the understanding between these parties that this Property and Child Custody Settlement Agreement, except as provided herein, forever and completely adjusts, settles, disposes of, and completely terminates any and all rights, claims, privileges, and benefits that each now has, or each may have reason to believe each has, against the other arising out of their marriage relationship, or otherwise; whether same are conferred by the laws of the Commonwealth of Kentucky or any other state of the United States, and which are now, or which may hereafter be, in force and effect.

This agreement was incorporated into the decree of dissolution entered on November 7, 1988.

After the dissolution, Riddle remained in the residence and was solely responsible for its upkeep and the debt thereon. He did not, however, refinance the debt or otherwise obtain a formal release of Mahurin's obligation on the mortgage held by

for and during their natural lives, and upon the death of either of them to go to the survivor thereof in fee simple, his or her heirs

and assigns forever. ..." The habendum clause contained similar language.

Farmers Bank. On October 2, 1995, Nelson obtained a judgment against Riddle in the Henderson Circuit Court in the amount of $27,911. In December 1995, Nelson filed a judgment lien on the Meadowlark Lane property. The judgment was not satisfied prior to Riddle's death on January 9, 1996.[2]

After Riddle's death, Mahurin apparently took possession of the realty and attempted to sell it. Nelson refused to release her lien and this litigation followed. During the pendency of this action, the property was sold. After the mortgage obligation to Farmers Bank was paid, the remaining proceeds were placed in escrow. In granting Mahurin's motion for summary judgment, the trial court concluded as follows:

> 6. The property settlement in the Dissolution of Marriage did not explicitly modify or alter the joint tenancy held by Mr. Riddle and Ms. Mahurin. Ms. Mahurin never conveyed full title to Mr. Riddle, as Mr. Riddle never had the name of Ms. Mahurin removed from obligation on the mortgage.

> 7. The surviving joint tenant takes the real property free and clear of any and all changes made by the deceased joint tenant. *Stambaugh v. Stambaugh,* Ky.App. [sic], 288 Ky. 491, 156 S.W.2d 827 (1941). The changes made by the deceased joint tenant, Don Riddle, would include the judgment lien on the property which was acquired by [Nelson].

> . . .

> 9. . . . Under the current laws and the property settlement agreement, Ms. Mahurin had no duty to convey her interest in the real property to Mr. Riddle until he had completed his promise to remove her name from obligation on the note to Farmer's [sic] Bank.

The trial court's final judgment awarded Mahurin the Meadowlark Lane property free and clear of the lien filed by Nelson. This appeal followed.

The issue presented by this appeal is what effect, if any, the decree of dissolution, which incorporated the property settlement agreement executed by Riddle and Mahurin, had on Mahurin's survivorship interest in the Meadowlark Lane property. There is no question that a tenancy by the entirety was created by the 1978 deed. Mahurin insists that after the dissolution she and Riddle were joint owners of the property and that her survivorship interest in the property survived the decree of dissolution. The trial court agreed. However, we hold that the survivorship aspect of the estate was destroyed by the circuit court's decree of dissolution.

There are many cases in this jurisdiction concerning the issue of how an estate in joint tenancy or, as in this case, a tenancy by the entirety, is created. There are few cases which address how such an estate is destroyed or terminated. Nelson relies on *Henderson v. Baker,* Ky., 362 S.W.2d 730 (1962), a case which factually and procedurally is nearly identical to the instant case. In that case, real property was held jointly with rights of survivorship between T.E. Davis (Davis) and Virginia K. Baker (Baker), then husband and wife. They divorced in 1959. The judgment of divorce "did not specifically identify any item of property to be restored." *Id.* at 731. Record title was not changed. Davis continued to reside on the property and make all the mortgage payments. When he died three years later, Baker asserted ownership under the survivorship clause in the deed. In an action brought by Davis' creditor, the trial court determined Baker to be the owner of the property and not Davis' estate. The former Court of Appeals reversed the judgment and held that the property should be restored to Davis' estate and that Baker was entitled to a lien against the real estate only for the amount

---

**2.** The record does not reveal whether Riddle died testate or intestate, or who is serving as the personal representative of his estate.

of her financial contribution during the marriage. *Id.*, at 731–732.

Mahurin argues that since *Henderson, supra*, was decided under KRS 403.060, our former restoration statute, which was repealed in 1972, its holding is not applicable to the case *sub judice*. However, while the scheme for classifying property as either marital or non-marital and dividing it upon dissolution has changed, the law concerning estates in property that is necessarily implied by the Court's holding in *Henderson, supra*, has not changed.

During their marriage, Mahurin and Riddle held the Meadowlark Lane property as tenants by the entirety.

A *tenancy by the entirety* is an estate in land shared by husband and wife, whereby at the death of either the survivor is entitled to full fee simple ownership. Under the common law, five unities were essential to the creation and existence of a tenancy by the entirety: interest, time, title, possession and marriage. Kentucky still recognizes the estate known in common law as *tenancy by the entirety* (citations omitted). A distinguishing feature of a tenancy by the entirety is that the survivor takes the entire estate at the death of the deceased co-tenant *not* by virtue of that death, but because, in law, each was viewed to own the *entire* estate from the time of its creation.

*Sanderson v. Saxon*, Ky., 834 S.W.2d 676, 678 (1992) (emphases original). The seminal case concerning a tenancy by the entirety is *Hoffmann v. Newell*, 249 Ky. 270, 274–275, 60 S.W.2d 607, 609 (1932), where the Court cited *Bernatavicius v. Bernatavicius*, 259 Mass. 486, 156 N.E. 685, 686 (1927), and stated:

> One of the distinguishing incidents of this venerable estate is that which exempts it from the ordinary processes to which all other estates are subject. A tenancy by the entirety fundamentally rests on the legal unity of the husband and wife. "It is founded on the common-law doctrine of the unity of husband and wife as constituting in law but one person. A conveyance to a husband and wife as tenants by the entirety creates one indivisible estate in them both and in the survivor, which neither can destroy by any separate act. Both husband and wife are seised of such an estate per tout et non per my as one person, and not as joint tenants or tenants in common. Alienation by either the husband or the wife will not defeat the right of the survivor to the entire estate on the death of the other. There can be no severance of such estate by the act of either alone without the assent of the other, and no partition during their joint lives, and the survivor becomes seised as sole owner of the whole estate regardless of anything the other may have done. The tenancy by the entirety is essentially a joint tenancy modified by the common-law theory of the unity of husband and wife. They do not take by moieties but by entireties."

A tenancy by the entirety is a unique estate which can only be "conveyed or encumbered [ ] by a joint instrument or with the consent of both tenants." *Peyton v. Young*, Ky., 659 S.W.2d 205, 207 (1983), Justice Wintersheimer Dissenting Opinion; *Weindl v. Weindl*, Ky., 359 S.W.2d 333 (1962). The estate arose when divorce was rare and "functioned as a rough equivalent of a homestead right, affording protection to the family and the nondebtor spouse." Graham and Keller, *Domestic Relations Law*, § 4.7 (2d ed., 1997). It is axiomatic that dissolution of the tenants' marriage terminates or destroys an "essential element of the tenancy—spousal unity." C. Bratt, *A Primer on Kentucky Intestacy Laws*, 82 Ky.L.J. 29, 95 (1993–94). As a result, a decree of dissolution, by operation of law, terminates a tenancy by the entirety and the concomitant right of survivorship to the entire estate.

Divorce is not an act of the parties. It is an act of the law.... That act of the law creates a new legal status, both for the husband and for the wife. It

divides the common-law unity hitherto existing. It creates two individuals in place of the unity theretofore recognized by the common law as existing. It substitutes for that unity two persons who thereafter are strangers to each other in their legal status. ... Divorce establishes a legal situation with respect to the man and woman previously husband and wife which is incompatible with the legal theory of tenancy by the entirety.... When persons who have been tenants by the entirety cease to be husband and wife, the legal factors necessary to that tenancy have gone out of existence. A tenancy by the entirety cannot be created by the most explicit words in a legal instrument, unless the man and woman are in truth husband and wife. It seems to us more in harmony with the principles governing such tenancies to hold that they cannot continue after the tenants have become divorced and thus have ended the legal relationship to each other, which constitutes the essence of that tenancy. The great weight of authority supports this conclusion.

*Bernatavicius, supra,* 156 N.E. at 686–687 (citations omitted). Thus, when a marriage has been dissolved and the former husband and wife continue to hold legal title to realty, they hold that property as tenants in common. *Id.; see also Bratt, supra* at 96. This was recognized in *Cowan v. Pleasant,* Ky., 263 S.W.2d 494, 496 (1953), in which the heirs of a man who murdered his wife with whom he held property in a tenancy by the entirety were determined to be "entitled to his one-half of the property, just as would have occurred in the event the marital relation had been severed."

■■■ In this jurisdiction, divorcing parties "may define by agreement their rights in each other's property ... [and those] agreements, provided they are otherwise valid contracts, are entitled to enforcement upon dissolution of the marriage." *Gentry v. Gentry,* Ky., 798 S.W.2d

928, 934 (1990). The trial court determined that Mahurin was entitled to the realty free of Riddle's post-dissolution debts because their property settlement agreement did not "explicitly modify or alter the joint tenancy." However, this reasoning fails to recognize that explicit language was not needed to modify or alter that which was terminated as a matter of law by the dissolution. Nothing would prevent a husband and wife from agreeing to hold title to real property as joint tenants with rights of survivorship after dissolution, however, such an intent would have to be clearly expressed in any agreement or conveyance. Mahurin insists that such an intent is evidenced by that portion of the agreement which provided for her retention of legal title until her name was removed from the mortgage indebtedness to Farmers Bank. However, the giving of Mahurin bare legal title until some future event occurred did not remotely create a survivorship interest. Indeed, as Mahurin concedes in her brief, the intent of the parties was merely to provide her with "some protection or control over the situation to insure that the debt on the property would be paid."

There is not a hint in the agreement that the parties intended for Mahurin to have any rights of survivorship in the property upon dissolution of their marriage. Indeed, the document contains several provisions clearly inconsistent with rights of survivorship. Those portions include: (1) the preamble, in which Riddle and Mahurin expressed a desire to effect a "complete and final settlement of all respective claims arising out of the marriage"; (2) paragraph 6, in which the parties released each other "from any and all rights of past, present and future support, division of property ... or any other property right ... accruing to either party by virtue of their marriage relationship"; and (3) paragraph 8, wherein Riddle and Mahurin stated their understanding that the agreement "dispose[d] of, and completely terminate[d] any and all rights, claims, privileges, and benefits that each now has,

or each may have reason to believe each has ... arising out of their marriage...." Further, there is no language in the agreement prohibiting Riddle's transfer or alienation of the property. More importantly, the agreement gave the sole right of possession to Riddle, severing the unity of possession necessary for maintaining a joint tenancy. *See Sanderson v. Saxon,* 834 S.W.2d at 678.

■ Finally, even if Mahurin did have a survivorship interest in the Meadowlark Lane property as a joint tenant, she would not be entitled to the same protection against Riddle's creditor as she enjoyed as a tenant by the entirety during the marriage. *See Peyton v. Young,* 659 S.W.2d at 207. The trial court's reliance upon *Stambaugh, supra,* for its holding that Mahurin was entitled to the property free and clear of Nelson's judgment lien is misplaced for the reason that the Stambaughs were never divorced and their joint tenancy by the entirety was not severed prior to Mr. Stambaugh's death.

Accordingly, having held that the trial court erred in its determination that Mahurin had a survivorship interest in the Meadowlark Lane property, the judgment quieting title in Mahurin is reversed. On remand, the trial court is ordered to direct the proceeds of the sale of the realty to be distributed to Riddle's estate where Nelson can litigate her rights therein, if any.

ALL CONCUR.