RENDERED:  JANUARY 15, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-1748-MR

SUZANNE WHEELER AND
JACKSON DAY WHEELER,
THROUGH HIS GUARDIAN                                             APPELLANTS


APPEAL FROM FAYETTE CIRCUIT COURT
v.         HONORABLE THOMAS L. TRAVIS, JUDGE
ACTION NO. 18-CI-01998


KATHARINE LAYTON                                                APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, DIXON, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Suzanne Wheeler and Jackson Day Wheeler, through his

guardian, appeal from the Fayette Circuit Court's August 22, 2018, Order

dismissing Katharine Layton as a party to their lawsuit against the Estate of

Matthew Layton (the Estate) and Katharine Layton for alleged claims arising upon

Matthew Layton's death. The Wheelers' motion to alter, amend, or vacate was denied by Order entered November 8, 2018.[1] For reasons that follow, we affirm.

BACKGROUND

Suzanne filed the complaint in this action on May 31, 2018, against the Estate and its co-executrixes, individually, along with Katharine, individually. The crux of the complaint seeks to dispute the disallowance of Suzanne's claims against the Estate pursuant to Kentucky Revised Statutes (KRS) 396.055. Although not artfully drafted, the complaint also attempts to assert individual claims against Katharine in regards to 1) a $70,000 check payable to Suzanne drawn on Matthew and Katharine's joint checking account that had not been delivered to Suzanne at the time of Matthew's death; and 2) certain real property, owned jointly by Matthew and Katharine located at 1803 Cantrill Drive in Lexington, Kentucky, that Suzanne is asserting an ownership interest therein by virtue of a disputed holographic will. The holographic will is being litigated in a separate proceeding in Fayette Circuit Court.

The Order entered on August 22, 2018, dismissed Suzanne's complaint against Katharine only, not the Estate. Upon appeal, Suzanne named

---

[1] Jackson Day Wheeler's status in this case is not explained in the complaint and we can identify no claim or basis of a claim by Jackson against Katharine Layton. Accordingly, we will only reference Suzanne Wheeler as appellant in this Opinion.

Katharine as a party, along with the Estate and its executrixes, individually. By Order entered by this Court on March 20, 2019, the Estate and its executrixes were dismissed as parties to the appeal. We emphasize the only issues in this appeal are limited exclusively to the dismissal of claims against Katharine.[2] In order to fully address the issues on appeal before this Court as pertains to Katharine, a brief review of her marital dissolution with Matthew is warranted, along with a brief summary of relevant probate proceedings in Fayette District Court.

Matthew and Katharine had been married fourteen years at the time of their divorce. A divorce decree was entered by the Fayette Family Court on March 30, 2017.[3] On that same date, a Separation and Property Settlement Agreement (Settlement Agreement) between the parties was filed with the court. In relevant part, the agreement provides as follows:

> 4. **BANK ACCOUNTS.** [Katharine] and [Matthew] have divided their bank accounts to their mutual satisfaction. Further, neither party shall make any claim against funds presently or hereafter in control of the other.

---

[2] The circuit court's ruling disposed of all claims asserted by Suzanne against Katharine. The November 8, 2018, Order made the August 22, 2018, Order final and appealable pursuant to Kentucky Rules of Civil Procedure 54.02 as pertains to those claims. The claims asserted against the other parties were not resolved nor final and appealable. *See Watson v. Best Fin. Servs., Inc.*, 245 S.W.3d 722, 726 (Ky. 2008).

[3] The parties have not cited to where the Decree of Dissolution of marriage was filed in the record on appeal. Accordingly, we have taken judicial notice of the family court docket in Action No. 17-CI-00713 that the Decree of Dissolution was entered by the Fayette Family Court on March 30, 2017. *See* Kentucky Rules of Evidence 201(b)(2); *Polley v. Allen*, 132 S.W.3d 223, 225-26 (Ky. App. 2004).

. . . .

    8. **REAL PROPERTY.**  It is agreed between the parties that [Matthew] shall take sole possession of 1803 Cantrill, Lexington[,] Kentucky to own as his own property in fee simple.  [Katharine] shall execute a quit claim [sic] deed concerning said property within a reasonable time after the decree has been entered. . . . That inconsideration [sic] of the foregoing, the parties agree that [Matthew] shall pay [Katharine] a total of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for her marital share of the property.

    The payments shall be as follows.  [Matthew] agrees to pay [Katharine] a lump sum amount of ($30,000.00) THIRTY THOUSAND DOLLARS within a reasonable time of refinancing the marital home in his name. [Matthew] shall also pay a lump sum amount of TEN THOUSAND DOLLARS ($10,000.00) by or before January 31, 2018.  [Matthew] shall pay the remaining amount in monthly payments to [Katharine] to be paid by the first day of each month in an amount not less than FOUR HUNDRED DOLLARS ($400.00). . . .

Record on Appeal at 74-76 (Appellant's Brief 2-4, Ex. 5).  The family court

approved the agreement and incorporated it by reference into the decree.

On June 5, 2017, Matthew committed suicide at his residence.  At the

residence, authorities discovered a check made out to Suzanne for $70,000, drawn

upon a joint checking account Matthew maintained with Katharine.  Also

discovered was a purported holographic will which stated in its entirety:  "I want

my house and vehicles to go to Suzie Wheeler."  It is uncontested that at the time

of his death, Matthew owed Katharine almost $60,000 of the $100,000 promised to

-4-

her under the Settlement Agreement for the Cantrill Drive property (hereafter the "residence") and that Katharine had not executed a quitclaim deed to Matthew for the residence.

At some point after Matthew's death, Katharine closed the joint checking account upon which the $70,000 check payable to Suzanne was drawn. The $70,000 check was never delivered to Suzanne and was not cashed. In August 2017, the Fayette District Court probated a typewritten self-proving will executed by Matthew on August 17, 1993. Under the terms of this will, Matthew bequeathed his estate to his parents.

In November 2017, Katharine filed a claim in the district court probate action seeking to recover the remainder of Matthew's $100,000 obligation to her for her ownership interest in the residence. In December 2017, the co-executrixes of the Estate, Matthew's mother and sister, filed an emergency motion in district court asking permission to sell Matthew's vehicles and the residence. Katharine filed a response stating that she owned the residence but did not object to its sale, provided her roughly $60,000 claim was paid at closing. Suzanne objected to the sale, asserting the residence and vehicles were hers via Matthew's holographic will. The district court granted the Estate's motion to sell the property in December 2017.

In February 2018, Suzanne filed claims in the district court probate action against the Estate. At their core, her claims asked the Estate to honor the $70,000 check written on the joint account and to award her the residence and Matthew's vehicles under the holographic will. Meanwhile, in March 2018, the residence was sold, with both Katharine and the co-executrixes of the Estate signing as grantors.

The Estate's co-executrixes disallowed Suzanne's claims in April 2018, stating she was "not due any monies or other property, whether real or personal, from the Estate of Matthew Houston Layton, Deceased." Record on Appeal at 37. Suzanne then filed this action in the Fayette Circuit Court on May 31, 2018, against the Estate; its two co-executrixes, individually; and Katharine.

Katharine immediately filed a motion to dismiss the complaint against her, arguing that upon Matthew's death, she was the surviving owner of the checking account and residence as a matter of law. The Estate and co-executrixes also moved for partial summary judgment. In August 2018, the circuit court granted Katharine's motion to dismiss, treating the motion as one for summary judgment due to consideration of matters outside the pleadings. Kentucky Rules of Civil Procedure (CR) 12.02 and CR 56. The Estate and co-executrixes' motion was "SUSTAINED in part and OVERRULED in part."

As concerns the claims against Katharine, the circuit court concluded she was the legal owner of both the bank account and residence upon Matthew's death, and thus there was no legal basis for any claim by Suzanne against Katharine. Upon denying Suzanne's motion to alter, amend, or vacate, this appeal followed.

STANDARD OF REVIEW

As noted, the circuit court treated Katharine's motion to dismiss under CR 12.02 as one for summary judgment under CR 56.03. Accordingly, the standard of review upon appeal of an order granting summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citing CR 56.03). Upon a motion for summary judgment, all facts and inferences in the record are viewed in a light most favorable to the nonmoving party and "all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Thus, if there are no factual issues, a summary judgment looks only to questions of law and we review a trial court's decision to grant summary judgment *de novo*. *Brown v. Griffin*, 505 S.W.3d 777, 781 (Ky. App. 2016); *see also Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 198 (Ky. 2010).

-7-

## ANALYSIS

We begin by noting that our review is limited to only those matters raised below that pertain to claims against Katharine. Thus, based on our review of the complaint and the orders on appeal, our review looks only to issues raised regarding the joint bank account and the residence located at 1803 Cantrill Drive in Lexington. We will not address matters pertaining to the holographic will, claims against the Estate, the divorce Settlement Agreement, and any other matters regarding the administration of the Estate. Those matters are not properly before this Court in this appeal. We further note that Suzanne raises several arguments on appeal that Katharine has violated the Separation Agreement entered into by Katharine and Matthew in their divorce. We decline to review those arguments for two reasons. First, Suzanne did not raise these arguments regarding the purported violation of the Separation Agreement before the circuit court nor are they referenced in the complaint. It has been the long-standing rule in Kentucky that appellate courts are without authority to review issues not raised before or decided by a trial court below. *Reg'l Jail Auth. v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989).

Second, and equally important, Suzanne was not a party to the Settlement Agreement and she has no standing to assert a claim thereunder, unless she could establish that she is a third-party beneficiary, which was not raised below

-8-

nor presented on appeal. Third parties may not seek to enforce a contract unless it was intended to benefit them directly (which Suzanne has not shown.) *See*, *e.g.*, *Presnell Const. Mgrs., Inc. v. EH Const., LLC*, 134 S.W.3d 575, 579 (Ky. 2004); *see also* KRS 403.180(5). Our review proceeds accordingly.

A. <u>The Joint Bank Account and $70,000 Check</u>

The circuit court concluded that the bank account was a jointly owned account by Matthew and Katharine with the right of survivorship. The court held that the survivor, Katharine, was entitled to ownership of the account upon the death of Matthew. We agree.

For many years in Kentucky, the common law permitted joint bank accounts to be created with survivorship rights. *See*, *e.g.*, *Bishop v. Bishop's Ex'x*, 170 S.W.2d 1, 2 (Ky. 1943). In 1976, the General Assembly enacted KRS 391.315(1)(a), which provides in relevant part that "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties to the account as against the estate of the decedent unless there is clear and convincing written evidence of a different intention at the time the account is created." KRS 391.315(1)(b) stresses the importance of the terms under which the account is opened and governed, providing in pertinent part that "[i]n transferring or releasing joint account funds subsequent to the date of death of one (1) or more of the named joint account holders, a financial institution or other appropriate third party may

-9-

rely conclusively on the form and terms of the account to pay in accordance with paragraph (a) of this subsection."

Here, the Central Bank and Trust Company Deposit Account Rules and Regulations for the joint account specifically provided that "the account will be a joint account with right of survivorship" and that "[u]pon the death of any joint tenant, the balance of the account shall belong to the survivor(s), and any surviving joint tenant will have complete withdrawal rights to the balance of the account (subject to the requirements of applicable probate law)." Record on Appeal at 70. Thus, there is no evidence in the record on appeal to overcome the presumption in KRS 391.315(1)(a) that the account was a joint account with right of survivorship. Consequently, Katharine could legally close the account as the sole owner upon Matthew's death.

As concerns the $70,000 check, it is undisputed that the check was not delivered to Suzanne nor cashed prior to Matthew's death. There is no evidence that Matthew was indebted to Suzanne at the time of his death. One can only presume that the check was contemplated as a gift. In Kentucky, a check which is not delivered to the drawee before the drawer's death is an incomplete gift. *See, e.g., Griffin v. Louisville Trust Co.,* 226 S.W.2d 786, 787 (Ky. 1950) ("On this appeal all parties admit that the check is not valid as a gift because until a check is either paid or accepted by the drawee, it is incomplete as a gift and the death of the

-10-

drawer operates as a revocation of the check."); 1 KENTUCKY PRACTICE, PROBATE PRACTICE & PROCEDURE § 667 *Checks* (2020) ("If a drawer delivers a check and dies before it is paid or accepted, there seems to be no theory under which the payee takes an interest if the check is without consideration. The check fails as a gift of the deposit for lack of delivery[.]") (footnotes omitted). Therefore, Katharine had no legal obligation to honor the $70,000 check. To the extent Suzanne claims to be entitled to $70,000 for assistance she gave to Matthew, or for a prior indebtedness, her claim would lie against the Estate, not Katharine.

B. <u>Residence at 1803 Cantrill Drive</u>

Katharine and Matthew acquired this real property while married, by deed dated October 5, 2010. Record on Appeal at 102. Under Kentucky law, their ownership constituted a tenancy by the entirety, which is created by the legal unity of a husband and wife. *Hoffmann v. Newell*, 60 S.W.2d 607, 609 (Ky. 1932). Presumably, this was the parties' marital residence until their divorce on March 30, 2017. The circuit court, as well as the district court below, held that Katharine obtained title to the property in fee simple upon Matthew's death based upon the survivorship provisions set out in the deed, relying in part on KRS 381.050.[4]

---

[4] The deed expressly provided for survivorship rights between the parties. *See* Kentucky Revised Statutes (KRS) 381.050(1).

Unfortunately, neither the courts below nor the parties to this appeal have addressed the correct and applicable legal authority that determines title to real property under the facts of this case.[5] In Kentucky, a divorce affects real property owned jointly by a husband and wife as tenants by the entirety as follows:

> It is axiomatic that dissolution of the tenants' marriage terminates or destroys an essential element of the tenancy—spousal unity. As a result, a decree of dissolution, by operation of law, terminates a tenancy by the entirety and the concomitant right of survivorship to the entire estate.
>
> . . . .
>
> Thus, when a marriage has been dissolved and the former husband and wife continue to hold legal title to realty, they hold that property as tenants in common.

*Nelson v. Mahurin*, 994 S.W.2d 10, 14-15 (Ky. App. 1998) (quotation marks and citations omitted).[6]

---

[5] Courts may, *sua sponte*, consider applicable legal authority at any stage of the proceedings, even if not cited by the parties or court below. *Community Fin. Servs. Bank v. Stamper*, 586 S.W.3d 737, 741 (Ky. 2019). When the facts reveal a fundamental basis for a decision not presented by the parties, appellate courts are duty bound to address the issue to avoid a misleading application of the law. *Mitchell v. Hadl*, 816 S.W.2d 183, 185 (Ky. 1991).

[6] This conclusion is not in conflict with KRS 381.050(2), which provides that when a husband and wife own property via tenancy by the entirety, "no provision of the will of the husband or wife shall be construed to defeat such right to the entirety by survivorship of the surviving spouse." Matthew Layton's will did not alter the tenancy by the entirety; the divorce did. Moreover, divorce is the act of a court, not the divorcing spouses. *Nelson v. Mahurin*, 994 S.W.2d 10, 14-15 (Ky. App. 1998) ("Divorce is not an act of the parties. It is an act of the law . . . . That act of the law creates a new legal status, both for the husband and for the wife.") (citation omitted).

The circuit court erred by concluding the residence passed to Katharine in fee simple at Matthew's death by survivorship inherent to a tenancy by the entirety. Legally, Matthew and Katharine continued joint ownership of the residence as tenants in common after their divorce. *See Nelson*, 994 S.W.2d at 15. Upon Matthew's death, his one-half ownership interest passed to his heirs at law or beneficiaries under his will. *Slone v. Casey*, 194 S.W.3d 336, 337 (Ky. App. 2006); *see also* KRS 381.120. And, at his death, Katharine retained her one-half ownership interest in the property as a tenant in common.

However, nothing prevents a husband and wife from agreeing to hold title to real property as joint tenants with a right of survivorship after their divorce, presuming their intent was clearly expressed in an agreement or conveyance. *Nelson*, 994 S.W.2d at 15. Whether such an intent occurred in the Settlement Agreement below is not an issue on appeal and will not be addressed by this Court. Again, as previously noted, Suzanne lacks standing to assert any claims under the Settlement Agreement as she was not a party thereto nor may she assert claims for alleged violations thereof in this case. Of course, if the lower courts below conclude that the holographic will is valid and enforceable, then Suzanne could arguably succeed to Matthew's one-half ownership interest in the residence or its proceeds.

-13-

Though we disagree with the circuit court's legal analysis regarding the ownership of the residence upon Matthew's death, we nonetheless agree with the court's grant of summary judgment for Katharine, dismissing the claims asserted by Suzanne against her. This Court may affirm a lower court for reasons justifiable under the facts and law, even if we reach the same result for different reasons. *Goetz v. Asset Acceptance, LLC*, 513 S.W.3d 342, 344-45 (Ky. App. 2016). Our ruling only disposes of any claims asserted by Suzanne against Katharine as set out in the complaint. We note that the Estate has not cross-appealed in this case or otherwise challenged the rulings of the circuit court as concerns the bank account, check, and residence. Also, the Estate sought and obtained its dismissal as a party to this appeal. Thus, our ruling on the bank account, check, and residence shall be binding on all parties below.

For the foregoing reasons, the August 22, 2018, Order of the Fayette Circuit Court dismissing Suzanne's complaint is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANTS:

Dustin C. Beard
D. Lyle McQuinn
Matthew S. Goeing
Lexington, Kentucky

BRIEF FOR APPELLEE:

Jessica K. Winters
Lexington, Kentucky