

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00028-CR

_____

AMADO FLORES, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1531154D

---

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Walker

**MEMORANDUM OPINION**

After pleading guilty to the offense of online solicitation of a minor, the trial court deferred adjudicating appellant Amado Flores's guilt and placed him on five years' community supervision. The State subsequently petitioned the trial court to proceed to adjudication after alleging that Flores had committed a new criminal offense by failing to timely report his change of address to law enforcement authorities, as required by law and by the terms of his community supervision. The trial court held a hearing on the State's petition to adjudicate Flores's guilt and found that he had violated a term of his probation, adjudicated him guilty, and sentenced him to three years in jail. In four issues, Flores appeals the trial court's order adjudicating his guilt. We will affirm the judgment as modified.

## I. BACKGROUND FACTS

As a part of his community supervision, Flores was required to comply with the sex-offender-registration procedures under Chapter 62 of the Texas Code of Criminal Procedure. Article 62.055(a) states that if a sex offender intends to move, he must "not later than the seventh day before the intended change, report in person to the local law enforcement authority designated as the person's primary registration authority . . . and provide the authority . . . with [his] anticipated move date and new address." Tex. Code Crim. Proc. Ann. art. 62.055(a).

About a year-and-a-half after Flores was placed on community supervision, the State filed a petition to adjudicate his guilt, alleging that he had failed to timely report

2

his change of address to law enforcement. The trial court conducted a hearing on the State's petition and found that Flores had failed to timely report his change of address to law enforcement. The trial court adjudicated Flores's guilt and sentenced him to three years in prison.

Flores admitted to his probation officer, Monica Morgan, that he had failed to timely register his intent to move to his new address but claims that he was told by an unknown person at the Fort Worth Police Department that it was his probation officer's responsibility to inform the department of his intent to move. At trial, the State presented contrary evidence from Officer Morgan and from Fort Worth Police Department officer Andrew Dilbeck.

Officer Morgan testified that on March 2, 2020, Flores informed her that he had moved to a new apartment on February 28, 2020. Officer Morgan asked Flores if he had registered his new address with the Fort Worth Police Department. Flores told Officer Morgan that he had called the police department to register his new address but was told that it was his probation officer's responsibility to register the new address. Officer Morgan then informed Flores that he had received inaccurate information and instructed Flores to call the police department immediately to set up an appointment for police to verify his new address. Officer Morgan testified that she did not believe that Flores had really tried to register his new address because Flores knew how to register a new address—he had done so twice in the past.

Officer Morgan visited Flores at his new apartment on March 8. Officer Morgan again asked Flores if he had registered his new address with the Fort Worth Police Department. Flores repeated what he had told Officer Morgan in February—that the police department had informed him that it was Officer Morgan's responsibility to update the sex-offender-registration system with Flores's new address. This time, Officer Morgan told Flores to go to the police department in person and to ask for Detective Sabo. Flores assured Officer Morgan that he would go there in person and register his new address.

On May 12, Officer Morgan audited her case files to ensure that her sex-offender probationers were in compliance with registration requirements. Officer Morgan noticed that Flores's address had still not been updated to reflect his new address. Officer Morgan called Flores but could not reach him. Flores called Officer Morgan back later that day and told her that he had tried to register his new address but could not do so because "everything had shut down" due to COVID-19. Officer Morgan testified that this was not true; the sex-offender-registration system had not shut down.

For the third time, Officer Morgan told Flores that he needed to register his new address with the Fort Worth Police Department. Later that day, Officer Morgan learned that Flores had finally updated the sex-offender-registration system with his new address as required by the law and the terms of his community supervision. Officer Morgan testified that it was not her duty—as Flores's probation officer—to

4

register his anticipated change of address for him and that the responsibility for registration was his alone. She stated that she had repeatedly explained this to Flores both before and during the months that he failed to report.

## II. ADJUDICATION OF GUILT

In his first issue, Flores claims that the trial court abused its discretion by finding that he had violated a condition of his community supervision and adjudicating him guilty.[1] Because the State proved by a preponderance of the evidence that Flores violated a term of his community supervision, we overrule this issue.

### A. STANDARD OF REVIEW

We review a trial court's decision to proceed with an adjudication of guilt for an abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). The trial court's decision must be supported by a preponderance of the evidence. *See id.* The evidence meets this standard when the greater weight of the credible evidence creates a reasonable belief that the defendant has violated a condition of his community supervision. *Id.* at 764. Proof of a single violation is sufficient to support

---

[1]The State argues that the evidence is legally sufficient to support the trial court's adjudication of guilt based on Flores's violation of a term of his community supervision. *See Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979). We note, however, that given the unique nature of a revocation proceeding, the *Jackson* standard for legal-sufficiency challenges on appeal does not apply to a trial court's decision to revoke community supervision. *See Miles v. State*, 343 S.W.3d 908, 913 (Tex. App.—Fort Worth 2011, no pet.). Accordingly, we review this issue under the standard of review that Flores has properly identified.

revocation of community supervision. *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012). The trial court is the sole judge of the witnesses' credibility and the weight to be given to their testimony, so we examine the evidence in the light most favorable to the trial court's order. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013).

## B. Sex-Offender-Registration Requirements

Flores claims that the trial court abused its discretion by finding that he had violated his community supervision by failing to register his new address with police because the State failed to prove that he intentionally or knowingly failed to do so. We note, however, that the State was not required to prove Flores's mental state when he failed to register his new address.[2] *See Febus v. State*, 542 S.W.3d 568, 573 (Tex. Crim. App. 2018) (citing *Robinson,* 466 S.W.3d at 172). Accordingly, we need not analyze the proof surrounding Flores's mental state when he failed to comply with his duty to register his new address. *See Robinson*, 466 S.W.3d at 172.

Flores further argues that he attempted to register his new address but that others thwarted his efforts. In other words, Flores claims that his failure to comply with the registration requirement of informing police of his new address was

---

[2]In *Robinson v. State*, 466 S.W.3d 166, 170-71 (Tex. Crim. App. 2015), the Court of Criminal Appeals held that the offense of failure to comply with the requirements of registering as a sex offender under Chapter 62 of the Code of Criminal Procedure is a "circumstances of the conduct" type of offense. The "circumstance" at issue is the duty to register, and the culpable mental state applies only to the duty-to-register element, not the failure-to-comply element. *Id.* at 172.

involuntary. The issue of the voluntariness of one's conduct is separate from the issue of one's mental state. *See Farmer v. State*, 411 S.W.3d 901, 905 (Tex. Crim. App. 2013) (comparing defense of "involuntary act" with defense that "focuses on the defendant's state of mind at the time of the incident"). The defensive claim that the failure to comply with sex-offender-registration requirements was due to an "accident" or "mistake," as Flores claims here, is analyzed under the rubric of an "involuntary act." *Febus*, 542 S.W.3d at 576 & n.33 (citing *Williams v. State*, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982)).

According to Flores, "his ability to notify anyone of his new address was the result of the third-party actions of his apartment['s manager] kicking him out and his probation officer refusing his next intended address." Flores claims that after he was forced to move out of his apartment at the end of February, he found a new apartment, but Officer Morgan disapproved of it because of its location. Having nowhere else to go, Flores moved in with his sister. A few days later, Flores moved to a new apartment. Approximately two-and-a-half-months later, Flores registered his new address. Flores claims that this delay was due to Fort Worth Police telling him that it was his probation officer's responsibility to update the sex-offender database.

Officer Morgan's testimony showed that it was not her responsibility to register Flores's new address, that police did not prevent probationers from accessing the sex-offender-registration system, and that Flores had been in continuous violation of the legal requirement that he provide law enforcement notice "not later than seven days

7

before his intended change of address" from February 27, 2020, until May 12, 2020, when he finally reported his new address. The trial court, as the trier of fact, was free to reject Flores's contention that his attempts to report the address change within the seven-day period were thwarted by the police department's alleged refusal to take his information. *See id.* at 575 (explaining that factfinder is free to choose which witness to believe and may reject any part of witness's testimony).

Flores also argues that the State presented evidence that he had violated a registration requirement that was not included in the State's petition to proceed to adjudication. Specifically, Flores points out that the State presented evidence that he had failed to report his new address not later than the seventh day after changing it which Article 62.055(a) also requires. *See* Tex. Code Crim. Proc. Ann. art. 62.055(a). Flores does not deny that he violated this provision. However, the fact that Flores was shown to have violated both parts of Article 62.0559(a)'s change-of-address provision is inconsequential; the State was only required to prove the violation of the terms and conditions of his community supervision alleged in its petition: Flores's failure to report his new address at least seven days before the intended change.[3] *See Garcia*, 387 S.W.3d at 26; *see also Guerra v. State*, No. 13-02-669-CR, 2004 WL 177146,

_____

[3]Proof of any one of the violations alleged in the State's petition to revoke community supervision is sufficient to support the revocation order. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980). In the State's petition to adjudicate Flores's guilt, it alleged that Flores had committed a new criminal offense by failing to timely report his change of address to law enforcement authorities as required by law and by the terms of his community supervision.

8

at *5 (Tex. App.—Corpus Christi–Edinburg Jan. 29, 2004, no pet.) (mem. op., not designated for publication) (holding that evidence that sex offender failed to provide verification of his address to local law enforcement either seven days before or after he moved was sufficient to support his conviction for failure to register as a sex offender pursuant to Article 62.04(a)).

We conclude that the trial court did not abuse its discretion by revoking Flores's community supervision and adjudicating him guilty because the State proved by a preponderance of the evidence that he had violated a term of his community supervision. *See Rickels*, 202 S.W.3d at 763. We overrule Flores's first issue.

### III. HEARSAY

In his second issue, Flores argues that the trial court abused its discretion by admitting numerous alleged hearsay statements made by Officer Morgan and Officer Dilbeck.

### A. STANDARD OF REVIEW

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018); *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). Under this standard, we will uphold the trial court's decision as long as it is within the zone of reasonable disagreement. *Beham*, 559 S.W.3d at 478; *Johnson*, 490 S.W.3d at 908. If the trial court's evidentiary ruling is correct under any applicable theory of law, it will not be

9

disturbed regardless of the reason for the trial court's ruling. *Johnson*, 490 S.W.3d at 908; *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

## B. THE LAW ON HEARSAY

Hearsay is an out-of-court statement that a party offers to prove the truth of the matter asserted within the statement. Tex. R. Evid. 801(d). Hearsay is generally inadmissible unless it falls within one of the enumerated exceptions. *See* Tex. R. Evid. 802.

## C. THE OBJECTED-TO TESTIMONY

### 1. Objection One

First, Flores complains that the trial court abused its discretion by admitting hearsay testimony about what address Flores had provided to Community Supervision Community Development (CSCD) to list on the Texas Department of Public Safety's sex-offender website. The first time that the State asked Officer Morgan what address Flores had given to CSCD, Flores objected. But after the trial court overruled Flores's objection, the State asked the question again, and Flores did not object. The State's questioning proceeded as follows:

> Q. Then on May 12th do you check the DPS sex[-]offender website?
>
> A. Yes, I was auditing my case and making sure everyone was in compliance.
>
> Q. So, what do you mean by auditing? Were you just going through every --

A. I was going through everybody that I supervise and cross referencing with information we have with the information on the DPS sex[ ]offender[-]registration website.

Q. When you came to this Defendant, Amado Flores, what did you find out?

A. I found out that his address that was provided to CSCD was not the same --

[Defendant]: Objection, hearsay.

THE COURT: I'm sorry. Your objection is hearsay?

Your response?

[Prosecutor]: I would need a little more clarity on what he's objecting to hearsay on.

[Defendant]: Testifying about, I think, other records that are not in evidence, out-of-court statement.

THE COURT: Response?

[Prosecutor]: The response to that would be first -- first, we're offering this in the effect on the listener. I'm about to ask her what she did when she found out this information.

But, second, these are open records. They are a government record. It's website that people use and --

THE COURT: Overruled.

The State then asked Morgan:

Q. (BY [Prosecutor]) So, Officer Morgan, I'll ask you again. What did you find out when you went on the website as for this Defendant, Amado Flores?

11

A. I found that the address listed in the DPS sex[-]offender[-]registration website was not the address he had provided me, the 3410 -- oh, sorry -- Riverstone Circle East.

To preserve error in admitting evidence, a party must make a proper objection and obtain a ruling on that objection. *Valle v. State*, 109 S.W.3d 500, 509–10 (Tex. Crim. App. 2003). In addition, a party must object each time the inadmissible evidence is offered or obtain a running objection. *Id.* at 509. An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection. *Id.*

Flores did not ask for a running objection to the State's questioning about what address Flores gave CSCD to list on the DPS sex-offender-registration website. Nor did Flores object when the State asked Officer Morgan about the address the second time. Therefore, any error in the admission of the objected-to testimony was cured.[4] *Id.* at 510. We overrule this part of Flores's second issue.

## 2. Objection Two

As to Flores's second hearsay complaint, Flores claims that the trial court abused its discretion by admitting Officer Morgan's testimony about the information she had obtained from the Fort Worth Police Department when she attempted to

---

[4]Even if Flores had preserved this issue for our review, we hold that Officer Morgan's testimony was not hearsay. The State offered this testimony to show the effect on the listener. Statements offered only to show their effect on the listener are not hearsay *In re Bexar Cnty. Crim. Dist. Atty's Off.*, 224 S.W.3d 182, 188–89 (Tex. 2007) (orig. proceeding); *Young v. State*, 10 S.W.3d 705, 712 (Tex. App.—Texarkana 1999, pet. ref'd).

12

confirm that Flores had entered his new address into DPS's sex-offender-registration website. Officer Morgan explained that she had contacted the Fort Worth Police Department to determine whether Flores had made an appointment with it to give them his new address. Officer Morgan testified as follows:

Q. Okay. What do you do next?

A. I hang up -- just a little. So between the time that he -- that I couldn't get in touch with him. I then contacted Fort Worth PD to clarify whether or not an appointment had been made or if there had been a mistake on their end and they confirmed that was not the case.

[Defendant]: Objection, hearsay.

[Prosecutor]: Again, Your Honor, this is just for the [e]ffect on the listener for her procedure.

THE COURT: Okay. Overruled.

On appeal, Flores argues that Officer Morgan's testimony regarding whether Flores had made an appointment to register his new address is "classic hearsay." The State, however, expressed that it was not offering this part of Officer Morgan's testimony for the truth of the matter asserted but instead was offering it to explain the effect that the information had on Officer Morgan's investigation. Testimony offered to show its effect on a listener is not hearsay. *See Bexar Cnty. Crim. Dist. Atty's Off.*, 224 S.W.3d at 188–89; *Young,* 10 S.W.3d at 712); *see also Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995) (holding that an appointment book and an application form is not inadmissible hearsay because they were offered simply to show how the defendant became a suspect in the investigation); *Thornton v. State*, 994 S.W.2d

13

845, 854 (Tex. App.—Fort Worth 1999, pet. ref'd) (holding that an officer's testimony is not hearsay when it is admitted, not for truth, but to establish the course of events and circumstances leading to the arrest).

After the trial court overruled Flores's objection, Officer Morgan testified that she further investigated and was able to confirm that the Fort Worth Police Department had not made a mistake. Accordingly, the trial court did not abuse its discretion by admitting Officer Morgan's testimony, and we overrule this part of Flores's second issue.

### 3. Objection Three

Next, Flores claims that the trial court abused its discretion by admitting portions of Officer Dilbeck's testimony. Officer Dilbeck testified as follows:

> Q. So what are your first steps when you get made aware of that [Flores's registration noncompliance] ?
>
> A. I pulled their file, see where they are registered at, check it against the computer databases and then go out and verify addresses, or whatever they are in or out of compliance with.
>
> . . . .
>
> Q. Okay. And what did Officer Morgan inform you about that [Flores's previous] address?
>
> A. That he moved from that address.
>
> [Defendant]: Objection, hearsay.
>
> [Prosecutor]: Again, for the [e]ffect on the listener, Your Honor. I'm going to go into what his steps were.

14

THE COURT: Overruled.

After the trial court overruled the objection, Officer Dilbeck explained the investigatory steps that he took after learning that Flores had moved out of his apartment. Testimony offered to show its effect on a listener is not hearsay. *See Bexar Cnty. Crim. Dist. Atty's Off.*, 224 S.W.3d at 188–89; *Young*, 10 S.W.3d at 705. The trial court did not abuse its discretion by admitting Officer Dilbeck's testimony because it was not offered to prove the truth of the matter asserted; it was admitted to show the effect it had on his role as a police officer.

We overrule this part of Flores's second issue.

### 4. Objection Four

In the fourth part of his second issue, Flores complains that the trial court abused its discretion when it admitted hearsay evidence from Flores's former apartment manager. The State asked Officer Dilbeck what the apartment manager had told him as it related to the timing of Flores's move. Flores objected on the basis of "hearsay, Crawford, Sixth, Fourteenth Amendment, [and] confrontation."[5] The State responded, "I'm not offering this for the truth of the matter asserted. I'm offering it for his action he's about to go through, his steps in his investigation." The

---

[5]In this issue, Flores only complains that this question called for a hearsay response. In his third issue, he argues that this question violated the Confrontation Clause of the Sixth Amendment. Therefore, we will address his Confrontation Clause argument when we address his third issue. Flores does not complain on appeal that this question violated the Fourteenth Amendment. Accordingly, we will not discuss whether the complained-of question violated the Fourteenth Amendment.

15

trial court overruled Flores's objection, and Officer Dilbeck testified that the apartment manager informed him that Flores had moved out in February 2020. Officer Dilbeck explained that he then used this information to research whether Flores had registered a new address between February 2020 (after he moved out of the apartment) and May 2020.

Police officers have been allowed to testify to information that might otherwise be considered hearsay in order to explain the course of an investigation or their presence at a crime scene. *See Dinkins*, 894 S.W.2d at 347; *Thornton*, 994 S.W.2d at 854. Officer Dilbeck's testimony merely described the steps he took in his investigation after learning that Flores had moved out of his apartment in February, and Flores does not argue that this was not a proper basis to admit Officer Dilbeck's testimony. The trial court did not abuse its discretion by admitting Officer Dilbeck's testimony, and we overrule this part of Flores's second issue.

### 5. Objection Five

Finally, Flores argues that Officer Dilbeck's testimony about what he saw when he looked at the Fort Worth Police Department's website regarding Flores's failure to schedule an appointment to change his address was inadmissible because the officer lacked personal knowledge. Texas Rule of Evidence 602 provides that a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Tex. R. Evid. 602. Personal knowledge may be proved by the witness's own testimony. *See id.*

16

Here, the State asked Officer Dilbeck if the Fort Worth Police Department's sex-offender database showed that Flores had made an appointment to change his address. After Flores objected, Officer Dilbeck testified that he had personally checked the database and saw that Flores had not made an appointment. Further, during cross-examination, Officer Dilbeck testified that part of his job is to "keep [the] records of people changing or with their intent to change residency" and that he is "familiar with [the] registration requirements for [a] change of residency prior to an actual change." Officer Dilbeck then stated, "[i]f [Flores] called and made [an] appointment, it would be notated in his [computerized] file."

We hold that Officer Dilbeck's testimony was based on his personal observation and knowledge of the Fort Worth Police Department's sex-offender database. *See id.* Accordingly, the trial court's decision to admit Officer Dilbeck's testimony regarding the information contained in the database was within the zone of reasonable disagreement and was not an abuse of discretion. *See Beham*, 559 S.W.3d at 478. We overrule the last part of Flores's second issue.

Having overruled all parts of Flores's second issue, we overrule his second issue.

## IV. CONFRONTATION CLAUSE

In his third issue, Flores claims that the admission of Officer Dilbeck's testimony relaying his former apartment manager's out-of-court statement—that

17

Flores had moved out of his apartment in February 2020—violated the Confrontation Clause.

## A. THE LAW ON THE CONFRONTATION CLAUSE

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause protects a defendant's right to physically face the witnesses who testify against him as well as his right to conduct cross-examination. *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S. Ct. 989, 998 (1987); *Macias v. State*, 539 S.W.3d 410, 421 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). Whether a statement is admissible under the Rules of Evidence and whether that statement is admissible under the Confrontation Clause are separate questions. *Crawford v. Washington*, 541 U.S. 36, 50–51, 124 S. Ct. 1354, 1363–64 (2004); *Walker v. State*, 406 S.W.3d 590, 596 (Tex. App.—Eastland 2013, pet. ref'd). "Thus, even when a statement offered against a defendant is admissible under evidentiary rules, the statement may implicate the Sixth Amendment's Confrontation Clause." *Walker*, 406 S.W.3d at 596.

## B. THE OBJECTED-TO TESTIMONY

Flores argues that the complained-of statement was not admissible because it violated his rights under the Confrontation Clause. Despite conflicting holdings in

other jurisdictions,[6] our court has previously found that the Confrontation Clause "applies only to criminal prosecutions, and a probation revocation, whether it follows 'regular' probation or deferred adjudication probation, is not a stage of criminal prosecutions." *White v. State*, No. 02-21-00059-CR, 2022 WL 623450, at \*6 (Tex. App.—Fort Worth Mar. 3, 2022, no pet.) (mem. op., not designated for publication); *Olabode v. State*, 575 S.W.3d 878, 881 (Tex. App.—Dallas 2019, pet. ref'd); *see also Pickins v. State*, No. 02-17-00050-CR, 2018 WL 3468359, at \*4 (Tex. App.—Fort Worth July 19, 2018, no pet.) (mem. op., not designated for publication) ("[W]e conclude that a community supervision revocation proceeding is not a stage of a criminal prosecution. Accordingly, the Confrontation Clause is inapplicable in those proceedings . . . .").

Because our court has continued to hold that deferred adjudication revocation proceedings are not "criminal prosecutions," we find in this case that the Confrontation Clause was inapplicable, and we conclude that the trial court did not abuse its discretion by overruling Flores's Confrontation Clause objection and admitting Officer Dilbeck's testimony.

---

[6]Based on the Texas Court of Criminal Appeals holding in *Ex Parte Doan*, 369 S.W.3d 205 (Tex. Crim. App. 2012), the Fourteenth Court of Appeals has held that Confrontation Clause rights do apply to probation revocation hearings. *See Hughes v. State*, No. 14-20-00628-CR, 2022 WL 778980, at \*4 (Tex. App.—Houston [14th Dist.] 2022, pet. granted); *but see United States v. Reese*, 775 F.3d 1327, 1329 (2015) (listing federal cases that hold that the confrontation laws do not apply to probation-revocation hearings).

19

Nonetheless, even if the Confrontation Clause did apply, any violation of the Confrontation Clause was harmless.

Flores's objection was made in the following context:

THE WITNESS: [Officer Morgan told me that Flores had] moved from that address several months prior to registering the new address.

Q. (BY [Prosecutor]) Did you just take her word for it or did you go check and verify?

A. I went and spoke to apartment management.

Q. Okay. What did apartment management let you know?

[Defendant]: Objection, hearsay. Crawford, Sixth, Fourteenth Amendment, confrontation.

[Prosecutor]: Your Honor, I'm not offering this for the truth of the matter asserted. I'm offering it for his action he's about to go through, his steps in his investigation.

THE COURT: Overruled.

THE WITNESS: That they had moved out of that apartment in February of 2020.

In determining whether a Sixth Amendment violation of the defendant's right to physically confront adverse witnesses face-to-face is harmless beyond reasonable doubt we consider: (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted, and, of course, (5) the overall strength of the prosecution's case; ultimately, however, any circumstance

20

apparent in the record that logically informs the harm issue should be considered. *Haggard v. State*, 612 S.W.3d 318, 329 (Tex. Crim. App. 2020) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 1442 (1986)).

Prior to the objected-to testimony, Officer Dilbeck testified—without objection—that Flores had moved out of his apartment several months before registering his new address. Additionally, Officer Morgan had testified earlier that Flores had moved into his new apartment in February without timely registering his new address. Therefore, the objected-to testimony was cumulative of other testimony that the trial court had already heard. Moreover, the prosecution's case was strong—Flores had admitted to both Officer Morgan and Officer Dilbeck that he had failed to timely register his intent to move to his new address. And Flores has never denied committing this offense.

Accordingly, we overrule Flores's third issue.

## V. PUNISHMENT EVIDENCE

In his fourth issue, Flores complains that the trial court abused its discretion by admitting certain evidence during his punishment hearing. Specifically, Flores complains that the trial court abused its discretion by admitting portions of Officer Morgan's testimony because it contained hearsay and was not based on her personal knowledge.

### A. HEARSAY OBJECTION

Flores objected to the following punishment testimony:

Q. Officer Morgan, first I would like, we briefly mentioned Debbie Flores, the mother of the Defendant, while he's been on probation. What's your opinion on him taking responsibility for his responsibilities on probation?

. . . .

THE WITNESS: It's my opinion that Mr. Flores takes limited responsibility for his probation and relies heavily on his mother. For that as evidenced by her reaching out to me, contacting me on a very regular basis and being responsible financially for all aspects of his probation.

Q. Are there times that you would call Amado Flores and get a call back from his mother?

A. Yes.

Q. And since this violation or this offense occurred have you been given a number of addresses by his mother for a potential new place to live?

A. Correct. Nearly 50.

Q. What was that?

A. Nearly 50.

Q. And where did those addresses come from? Amado Flores or his mother?

A. From his mother.

Q. In your conversations with his mother has she minimalized his criminal behavior?

A. Yes.

Q. Did she actually tell you that age has never been a problem for her?

A. Yes.

22

Q. Did she tell you that he would become a problem child if you keep messing with her son?

[Defendant]: Objection, Your Honor. Hearsay.

[Prosecutor]: Your Honor, I'm going to get to how it affected her and what she does on probation.

THE COURT: Overruled. So you're not offering it for the truth of the matter asserted?

[Prosecutor]: Not at this time, Your Honor, no.

The State informed the court that it was offering this testimony—not for the truth of the matter asserted—but to demonstrate that Flores had failed to take responsibility for the terms of his probation and to explain why Officer Morgan treated Flores different from her other probationers. Later, the State asked additional questions about Flores's mother's involvement in Flores's probation. The State asked Officer Morgan:

Q. (BY [Prosecutor]) So while you were supervising Amado Flores's probation, did you have to treat it differently than other probations because of his mother?

A. Can you clarify what you're asking?

Q. Did you have to do more, like let's say the 50 addresses, right, because of his mother?

A. Yes.
. . .

Q. Was he even aware that he had an outstanding balance?

A. He was not. He –

23

Q. Why was that?

A. He said that his mom usually pays those fees, so he was unaware he had an outstanding balance.

Q. Throughout his probation did you have to remind his mother that she was not the one on probation?

A. Yes.

Officer Morgan's testimony was not hearsay; it was admitted to show why she took the actions that she did while supervising Flores's probation. *See Dinkins*, 894 S.W.2d at 347 (holding that police officers are allowed to testify to information that might otherwise be considered hearsay in order to explain their actions). We overrule this portion of Flores's fourth issue.

## B. PERSONAL-KNOWLEDGE AND HEARSAY OBJECTIONS

Next, Flores claims that the trial court abused its discretion by admitting Officer Morgan's testimony about Flores's bond violations. Officer Morgan testified as follows:

Q. Did you supervise him while he was on bond for the felony offenses he picked up?

A. Yes.

Q. Did you become aware of two different bond violations while he was on bond?

A. Yes.

Q. Okay. What was one of them?

A.  One was that he had gone within a thousand feet of a place where children commonly gather, namely Marco Santos Academy and Todd's Haven Christian Academy, which are daycare facilities.

[Defendant]:  Objection, Your Honor. Hearsay, personal knowledge.

[Prosecutor]:  Again, this is just for the [e]ffect on the listener, Your Honor. She's about to testify what her actions were while she was supervising him.

THE COURT: Overruled.

After the trial court overruled Flores's objection, Officer Morgan testified that she issued a bond-forfeiture warrant upon learning of Flores's bond violations. Testimony offered to show its effect on a listener is not hearsay. *See Bexar Cnty. Crim. Dist. Atty's Off.*, 224 S.W.3d at 188–89; *Young*, 10 S.W.3d at 705.  The trial court did not abuse its discretion by admitting Officer Morgan's testimony because it was not offered to prove the truth of the matter asserted; it was admitted to show the effect it had on her role as Flores's probation officer.

As to Flores's personal knowledge objection, Officer Morgan testified that she is a community-supervision officer assigned to the sex-offender unit.  Officer Morgan explained that her job is to meet with sex offenders who have been placed on probation and to "make sure that they are remaining in compliance with [the conditions]" placed on them by the courts.  She identified Flores in open court and testified that she had supervised him while he was on bond for his felony offenses and that she was aware of two different bond violations he had committed while on bond. We conclude that Officer Morgan demonstrated her personal knowledge of Flores's

25

bond violations. *See Contreras v. State*, No. 05-12-01075-CR, 2013 WL 3956923, at *4 (Tex. App.—Dallas July 30, 2013, no pet.) (mem. op., not designated for publication) (holding that probation officer had personal knowledge of appellant's violation of a term of his community supervision because officer was assigned to the court that placed appellant on community supervision, she identified appellant in open court, and she stated that she knew appellant had violated a term of his community supervision).

The trial court did not abuse its discretion by admitting this testimony. We overrule this part of Flores's fourth issue. Having overruled both parts of Flores's fourth issue, we overrule it.

## VI.  CORRECTING THE JUDGMENT

Although neither Flores nor the State brought this issue to our attention, we note that the trial court's judgment is incorrect. Although the record shows that Flores pled "not true" to the alleged community-supervision violation, the trial court's written judgment incorrectly reflects that he pled "True." An appellate court may modify the trial court's judgment to make the record speak the truth if the court has the necessary data and evidence to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). We therefore modify the trial court's judgment to reflect a plea of "Not True" to the petition to adjudicate.

## VII.  CONCLUSION

Having overruled Flores's four issues, we affirm the trial court's judgment as modified.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 4, 2022